Good afternoon. I appreciate the courtesy of people observing the normal courtroom decorum. We'll next call appeal number 06-1168, Desa IP v. EML Technologies. Mr. Higgins, good afternoon. Welcome and please proceed. May it please the court. I'm James R. Higgins, Jr. appearing on behalf of Appellant Desa. District Court committed two fundamental errors in this case. First, it erroneously treated three claim elements as governed by Section 112.6. And second, even if 112.6 applies, it over-included structure from the specification to perform the recited function. Which is your better argument? They're equally good, Your Honor. Are you planning to spend equal time on them? I hope to spend equal time, Your Honor. Up to you. Because I believe that they are equally good. You'd be wiser to focus on the second one. But we'd love to hear from you on the first one. Turning now to my second point. There you go. Well, with all due respect, don't give up on the first one altogether because even though the suggestion is that that's not a winner for you, I'd be interested in hearing succinctly why you think it's not a 112.6 claim since you have used the term means throughout. Now you know why it's not a winner. And the structure that's suggested is certainly not a complete structure. So is there something I'm missing? Perhaps my colleagues may be clear on this, but is there something I'm totally missing in this? I think this case is very much like the baffle means claim term in Bercow because the term baffle itself implies structure that took it out of the statute. And in this case, there's structure that is conceded in the red brief at pages 28, 31, and 33. The underlying portions, sensor, certainly structure. Control circuit, certainly structure. But let's stop with sensor because that's a key term in this whole dispute, isn't it? Absolutely. You're suggesting that a sensor means is being used here, if you will, as a noun for a sensor. That is a thing. It's a thing means, sensor means. And a sensor has structure. Is that your point? A sensor has structure. It is recited in what we call the MDE, the Modern Dictionary of Electronics. To persons skilled in the art, when they read that the sensor is in the claim, then they read the rest of the claim in context. How many types of sensors are there?  If sensor is going to be viewed as sufficiently structural to avoid the impact of Section 112.6 of the Patent Act, then how am I as a competitor to know whether I'm infringing or not? If I use sensor type 1 and somebody else uses sensor type 2 and the specification talks about sensor type 3, am I infringing or not? Everything is in the context of claims. Now you know why you wanted to start with 2. Very well, sir. But to answer Chief Judge Michel's question, the structure is in the word itself. It's defined in the dictionary. The means already by the use of that word killed you. You were further killed by the fact that sensor could include almost anything. In fact, this invention has two kinds of sensors. You've got a motion sensor and a light sensor. Which is which? And you're way off base on this one. Get to your second argument. Well, let me ask you this before you do. This isn't a debate. Go on to your argument. The term sensor means, as you're using it, could mean the same thing as a means for sensing or detecting something, couldn't it? Yes, it could, Your Honor. That indeed is how it was used. That's indeed how the district court interpreted it. And we think that's incorrect. But if I can turn to the second point here, even if 112.6 applies, there is substantial over-inclusion of structure that is necessary to perform the recited function. And in addition, the- Specifically what is over-included? Well, specifically, the court included a term called pulse count, 51, in the circuit diagram. And that recites a different function altogether than the recited function in the claim. The recited function in the claim is to detect motion of a person or object. And the patent expressly teaches that the purpose of pulse count is to reduce false triggers. It has nothing whatsoever to do with the actual sensing and detecting of motion. Well, it does and it doesn't. I mean, it limits false positives if it works as advertised. That has some connection to sensing true motion. But that's the position of the appellees in this case, Your Honor. But the claim doesn't recite that. The claim, the words of the claim control, the claim recites that it's for sensing, detecting motion of a person or object, not true motion of a person or object. Yeah, but if the brick wall radiates absorbed heat, we don't have motion of a person or a thing, but we might have a signal that would trigger the light if you don't have that phase pulse process in place. But the radiation that's coming off that wall is being carried by air, and air is an object. And that's the motion that's being sensed is that heat carrying air, if you will. And in addition, if you look at all of the functions that are in that circuit diagram, the first of them, detector block 43, that is to select and filter signals that most closely correspond to a human. It is reading or object out of the claim. If you make that part of the sensor means. The next circuit component is simply an amplifier. And all of these are acting on signals that have been given off by the passive infrared sensor. And by the way, the passive infrared sensor is mentioned as such over 11 times in the specification. And the signal comes from the passive infrared sensor.  That's all that the claim requires. The next block is the window comparator. And all that is doing is taking the filtered signals and converting them to spikes. And it's rectifying the negative spikes back into the positive spike. And so. What's your best legal argument for the over inclusion point? It's the assist case, Your Honor. And the assist case says that the claim is to be interpreted only so far as the structure is assigned that is necessary to perform the recited function and no more. And we also have the applied medical case. And the applied medical case says that it is error to import a function from the working embodiment into the claim term that is being discussed. And J.B.W. How is the prosecution history relevant to your point? The prosecution history is relevant in every case. In this situation, there was an allegation, we think improper, that there was a disclaimer that required pulse count to be in every claim. But the pulse count at that time was only argued with respect to then pending claim 16, which became claim 12. The pulse count is expressly recited as part of the control means in claim 12. And not in the other three asserted claims. And not in any other asserted claim. Remind me, counsel, I don't think we have the accused device in front of us because you all stipulated to the outcome, didn't you? Correct, Your Honor. Missing the pulse count? But is it fair to assume that the accused device does not have a pulse count mechanism? It is fair to assume that. So that's sort of the center of the dispute here in terms of whether there's going to be infringement or not. The way that that part of the claim term was interpreted as being part of the censor when it's actually recited in the control circuit is very central to the question of infringement. Does infringement key on the censor means? Is that what you're saying? Well, infringement, of course, keys on all of the claim elements. They all have to be present. That is certainly one that we concede we cannot demonstrate is present in the accused device. Now, I think this case is very much like Rodime where there were three asserted claims, three, five, and eight, and another claim, 11, and the additional function of thermal compensation means was in the non-asserted claim. Here, the asserted claims include censor means, control means, and the interpretation that has been applied to it. We're going to hear in just a minute that in order to distinguish over the Nippon reference, you had to include pulse control means. You had to include pulse control within the censor means. Your response to that? The response to that is that the— And that that will apply to all the claims. The response to that is that the only claim that the patent examiner cited back to us with respect to applying the Nippon reference was claim 13, and the only reference that we particularly argued in response back to the patent office was with the then pending claim 16. Which became 12. Which became 12. And you had other means for distinguishing Nippon with regard to the other claims, right? The use of the infrared and the photocell together also distinguished over Nippon? There were—the particular term was other terms that distinguish, and it's absolutely right. There are other terms in these claims that distinguished over the Nippon reference. Particularly there's a timer aspect that is part of the control circuit means. There is manual override. That's not part of any asserted claim. There is zero crossing detect. That's not part of the Nippon reference. So there were multiple reasons why these claims were allowed over the Nippon reference, and the claim pulse count term was only argued with respect to claim 16, part of the control circuit means. Do you want to save your remaining time for rebuttal? Very well, Your Honor. Thank you. Mr. Cook. Mr. Cook, before you launch into your own points, could you help me understand the process that was followed here? As I recall, each side had an expert. The court selected her own expert. The participation of the court's expert never seems to appear in the documentation that we had. What did the court's expert contribute here? I don't know for sure. The court's expert did, Professor Carnell did, interrogate Mr. Raper at one point with regard to his courtroom experiment he put together. But the court's expert never testified. He never testified. Nor filed a written report on the issues at hand. He did not file a written report. Now, do you know whether the court's expert communicated privately with the district judge? My belief is that that would have happened. Was that agreed to by the parties, or was that just done on? Yes, it was. It was agreed to. He was to be a consultant. One other thing on the process, just so I understand what happened. As I recall, there was about a three-day taking of testimony on claim construction. And I believe it was right at the conclusion of that that, dictating from the bench ad lib, the district judge set forth her claim construction. Yes, she did. And that's a little bit unusual by my recollection, particularly in a case that has some technological complexity. Very often there is an extensive argument by attorneys, some post-argument briefing, and then a very carefully crafted written decision filed some weeks or so later by the district judge. And that didn't happen here. Was there some agreement that the judge would dictate from the bench extemporaneously? No, there wasn't. Did you think it was a good procedure in a case like this? This case particularly lent itself to it because the issues were so well packaged. If you look at the master claim chart. Did either you or your opposing counsel get a chance to question the course expert at any point? I don't believe so. Was there any final argument at the end of the testimony, still within the Markman hearing? Yes, there was. But no post-argument briefing? No, there wasn't. Is it fair to say that your expert, Dr. Massingill, she apparently gave substantial credence to your expert's view of the case? She certainly adopted the claim interpretations that were expressed and proposed by Professor Massingill, yes. What was his precise area of expertise? I know he was an electrical engineer and I believe a professor. But more specifically, what was his field and how does that compare in proximity with the field of security, light design activity? He is not a lighting engineer, but this patent was not concerned with lighting engineering per se. Mr. Raper, the inventor or the head of the DESA lighting business, was himself an electrical engineer. He was put in charge of the lighting product line without any prior experience in lighting the technology that's covered by the claims, which is set out in the schematic diagram, figure two. Obviously what I'm getting at is that the argument is made by Mr. Higgins that your expert's zone of expertise was broad in general and not particularly pertinent to the specific technology at hand as compared to his expert, who I believe was a lighting designer. And the implication was that the district judge should have been a little cautious about relying so heavily on your expert and perhaps given a little bit more relative weight to the assertions of the contrary expert. What's your response to that? Well, the issues that were before the court were electrical engineering issues, specifically analog electrical engineering, and that was in the specific area of Professor Masengill's expertise. There was a great deal of pre-hearing discussion over what kind of expertise was required. You know, when he starts talking about selection circuitry, I'm looking at the diagram and going blind trying to find selection circuitry there. There's control circuitry with many different parts and functions, but there isn't any selection circuitry. So he seems to have made up a whole new nomenclature that's not in any of the documents in this case, and it seems like the district judge accepted that. That looks a little questionable to me. How do you justify that? I think he simply used that as a phrase to describe the collection of circuit. There were about four. In addition to the PIRs, there were about four circuit blocks, and he used that term to describe them all. There wasn't a term in the patent that described all of them. Excuse me for interrupting. There are several claims here that are asserted, and the district court has read pulse control as part of the sensor means in all of those, and yet we have a separate claim here, Claim 12, which specifically mentions pulse control and puts it not in sensor means but in the control circuitry. How do we miss the fact that the court perhaps did not apply the doctrine of claim differentiation? I think the court did not apply the doctrine of claim differentiation. Why wouldn't you in this case where pulse control is so specifically limited to one claim? Why would you read it in every place else? Because the evidence seemed to point to the fact that sensor means, I'm sorry, that pulse counting was part of the sensor means. But pulse counting really isn't even sensing anything. It is reducing false positives. It isn't sensing. You suggest in your brief that this was an oversight or reading Claim 12, the way Claim 12 was written was some sort of an oversight. We did. Claim 12 was brought in during prosecution. I'm having a little trouble with your sort of blowing that off, that issue, as just an oversight by the PTO, because that would suggest that any time there is an inconsistency among the claims or there's something that litigating counsel doesn't like, we're going to have a new doctrine called oversight, which we can invoke any time we want. How are we to know when there's a legal oversight and when there isn't one if we adopt your theory? I'm not sure it requires adopting a theory. The rule that Dessa was relying on is expressed as internal coherence, that the same claim term should use the same. Well established. I understand the rule. It's well established, and it would seem to have direct application to your case. And in the Phillips case, very recent Phillips v. AWH case, it said because claim terms are normally used consistently throughout the patent, the usage of a claim term in one claim can often illuminate the meaning of the same term in other claims. In other words, it's not a must. We all understand that, and we always put the word normally or generally in so that we can leave ourselves wiggle room when we really need to wiggle. But absent the need to wiggle in your case, why should we jump off the cliff with you on this one? Simply because once the technology was explained by the experts, it became obvious to the expert and to ourselves that it really did belong in the censor means. There were several anomalies that were introduced into the patent by a different patent attorney who took over prosecution. Was that patent attorney just very perceptive of the need to put the pulse control right where it needs to be in the control circuitry rather than in sensing motion? It doesn't sense motion. It reduces false positives. He's going to make sure that distinction is clear. He puts it over there in Claim 12, and maybe the district court missed that. That seems to be a consistent way of reading the prosecution history. It's reinforced by the fact that you're distinguishing over Nippon only for Claim 16, which becomes later Claim 12. So there seems to be a real coherence there with the way that developed. Why is it more logical? You seem to be suggesting it's more logical to consider the pulse timing activity with sensing than with control circuit. I would have thought it's exactly the opposite, that all the manipulations of the signals emanating out of the sensors would be part of the control circuit. Well, the way that the schematic diagram is laid out, it starts on the left-hand side with the PIRs, and it proceeds through a number of signal processing. Yeah, yeah, and the PIRs are outside the dotted line that marks all the successive signal processing steps. That's exactly my point. It makes it look like first you have sensing by sensors, then you have a whole lot of manipulation of the signals emanating out of the sensing devices that do various things, all of which are part of the control circuit. And at the end of that block of circuits, elements at the top of the diagram, a signal emerges, and it's either high or low. And if it's low, then the light switches to bright, and if it's high, the light will switch to dim. Yeah, yeah, but the question is why pulsing isn't part of controlling rather than part of sensing. Because of what pulse counting actually does. Pulse counting distinguishes between motion and non-motion. It distinguishes between the motion of an object that's reflected... Would you call that distinction process controlling? That sounds like a pretty reasonable way to read it. I'm kind of with the chief judge's reasoning on this. Why isn't that distinguishing factor between various kinds of motion sensing, why isn't that something more logically in the control category rather than the sensing category itself? Because it's sensing the difference between motion of a person or object and changes in IR that have nothing to do... Why wouldn't we just read the claim to find out? And it puts it right there in control circuitry, doesn't it? Claim 12 does. Your argument seems to be that a sensing means not only senses motion, but it senses non-motion. And that non-motion includes a brick wall that radiates infrared differentially because of heating, but that's non-motion, and that's what the pulse count does. That's exactly correct. And so your argument is, if you want to understand a means for sensing or discriminating, you have to include the pulse count in order to know what non-motion is. Exactly. At least I understand your argument. Now, I mean, as we did point out in the brief, it doesn't make any difference to the outcome of the case because if the control circuit means claim element is present in every single claim as well. Well, that's what I was puzzled about. Why does it matter? And you're saying it doesn't. I'm saying that pulse counting... Don't forget, we're here because... The pulse count as part of the control circuitry only appears in claim 12, right? There's no pulse count, say, in 11 or 1 or anything? It's not expressly recited. It's part of the means plus function. Wait a minute. You say it's not expressly recited, but it's part of the means plus function function. I don't think you can have that. If it's not expressly recited, it's not a function for which you need to look in the rest of the specification for corresponding structure that carries out that function. If I characterized it as a function, I apologize. The pulse counting circuit is structure that senses the difference between motion and non-motion. That's a good linguistic argument, but what function that is recited under control circuit corresponds with the pulse count? Detecting the motion of a... I'm sorry, switching the light from dim to bright in response to detection of motion. Anything further? I wanted to underline the fact that the stipulation is that pulse counting is not present either literally or by equivalence. As a result of that, as long as pulse counting is in the claims, then there would be no infringement and no need to go further. I think we've got that. All right, Mr. Cook, thank you. Mr. Higgins, you have a little under three minutes if you need it for rebuttal. And if I may, Mr. Higgins, let me point you directly to the dialogue that I was having with Mr. Cook over what non-motion is. You understood his argument that the sensors sense motion, and we all agree to that. He also argues that the sensors must by definition sense non-motion, which includes the non-motion of heating of large fixed objects. And to do that, you need the pulse counter. What's wrong with that argument? What's wrong with it is that it's really incorporating portions of the preferred embodiment into the claim language that doesn't recite that. I know of no requirement that a claim has to exclude all forms of motion. And, in fact, what is happening here is that this particular claim is reciting the detection of motion or object rather broadly. And to require that the claim term be interpreted in such a way that it distinguishes desired motion from non-desired motion is going too far. And what we're really talking about here, I think, is predominantly the over-inclusion argument, beginning with the pulse count being part of the control circuit in Claim 12. It renders, if all the claims have pulse count as part of the sensor means, then that interpretation renders the actual express recitation in Claim 12 a redundancy and a surplus, and that's against the precedent of this court. All of the functions of the so-called selection circuitry begin with a signal from the only detector and sensor in the patent that actually does sense motion, and that's the PIRs. And it's taught at least five times in the patent that the PIR sensors detect motion. Why are they called passive infrared sensors? I don't know what the opposite would be, active infrared sensors perhaps. What is it that distinguishes a passive infrared sensor? Because the sensor is in a particular passive location. It's up on the roof of the house or it's stationary. So it receives whatever signals in that wave range that it receives, that it can register. In the real world, they have a lens, and that lens focuses on what they call a field of view. And if objects that have a heat signature or persons go into that field of view, then that PIR generates the signal. But, again, we're talking about preferred embodiment. It's not required to claim the preferred embodiment in every claim. And Claim 6 simply does not. What's really at issue in your case, isn't it, is whether they've succeeded in designing around your patent. Isn't that what's the bottom line of all of this? Well, what's really at issue, yes, it is, but what's really at issue is whether they have succeeded in impressing an improper claim construction on the district court. And we suggest that that is error and the case should be reversed. I see my time is up. Thank you, Mr. Higgins. Thank you, Mr. Cook. We'll take the case under advisement.